No. 25-6158

**UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**

DWAIN EDWARD THOMAS,
*Plaintiff-Appellant*,

v.

KEVIN STITT, STEVEN BICKLEY, T. HASTINGS SIEGFRIED,
SCOTT CROW, TOM BATES,
*Defendants-Appellees*,

On Appeal from the United States District Court for the
Western District of Oklahoma, Hon. Timothy D. DeGiusti
No. 5:20-CV-00944-D

# BRIEF OF APPELLEE GOVERNOR J. KEVIN STITT

Phillip G. Whaley
Grant M. Lucky
RYAN WHALEY
400 North Walnut Avenue
Oklahoma City, OK 73104
(405) 239-6040
(405) 239-6766 FAX
pwhaley@ryanwhaley.com
glucky@ryanwhaley.com

*Counsel for J. Kevin Stitt, Governor of Oklahoma*

**ORAL ARGUMENT IS NOT REQUESTED**

# TABLE OF CONTENTS

STATEMENT OF PRIOR OR RELATED APPEALS ........ 1

INTRODUCTION ........ 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ........ 3

STATEMENT OF THE CASE ........ 4

I. Thomas's Murder Convictions and Parole-Eligible Life Sentences ........ 4

II. Oklahoma's Parole Process and Thomas's Repeated Parole Consideration ... 5

III. Procedural History and the District Court's Summary-Judgment Ruling ... 10

STANDARD OF REVIEW ........ 17

SUMMARY OF THE ARGUMENT ........ 18

ARGUMENT ........ 21

I. The District Court Correctly Rejected Thomas's Unwarranted Expansion of *Miller* ........ 22

A. Miller Prohibits Mandatory Life Without Parole, Not Parole-Eligible Life Sentences ........ 23

B. Jones and this Court's Precedent Foreclose Thomas's Attempt to Expand Miller. ........ 28

II. Even if *Miller* Were Implicated, the District Court Correctly Held that Oklahoma's Discretionary Parole System Does Not Violate the Eighth Amendment ........ 32

A. Oklahoma's Discretionary Parole System that Allows Consideration of Youth and Other Mitigating Factors Satisfies Graham, Miller, and Jones 32

B. Thomas Failed to Create a Genuine Dispute that Oklahoma's Parole System Bars Consideration of Youth or Other Mitigating Factors ........ 37

III. The District Court Properly Declined Supplemental Jurisdiction Over Thomas's State-Law Claim ........ 40

CONCLUSION ........................................................................................................41

STATEMENT REGARDING ORAL ARGUMENT ...............................................42

CERTIFICATE OF SERVICE .............................................................................43

CERTIFICATE OF DIGITAL SUBMISSION ......................................................44

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT ..................45

## TABLE OF AUTHORITIES

**Cases**

*Budder v. Addison*,
851 F.3d 1047 (10th Cir. 2017) .......... 10, 22

*Conaway v. Smith,*
853 F.2d 789 (10th Cir. 1988) .......... 17

*Davis v. McCollum*,
798 F.3d 1317 (10th Cir. 2015) .......... 20, 30, 31

*Dodd v. United States*,
545 U.S. 353 (2005) .......... 27

*Graham v. Florida*,
560 U.S. 48 (2010) .......... 1, 2, 3, 10, 18, 19, 20-22, 24-26, 28, 31-34, 36, 41

*Greenholtz v. Inmates of Neb. Penal & Corr. Complex*,
442 U.S. 1 (1979) .......... 35

*In re Robinson,*
921 F.2d 252 (10th Cir. 1990) .......... 18

*Jones v. Mississippi*,
593 U.S. 98 (2021) .......... 20, 21, 28, 29, 30, 31, 34, 35, 37

*Miller v. Alabama*,
567 U.S. 460 (2012) .......... 2, 3, 10, 14, 15, 18-26, 28-32, 34, 40, 41

*Montgomery v. Louisiana*,
577 U.S. 190 (2016) .......... 10, 22, 23, 25, 27, 30, 32, 35

*Mullaney v. Wilbur*,
421 U.S. 684 (1975) .......... 28

*Ohio Adult Parole Auth. v. Woodard*,
523 U.S. 272 (1998) .......... 36

*Ong Vue v. Henke*,
746 Fed. App'x 780 (10th Cir. 2018) .......... 36

*People v. Wilson*,
220 N.E.3d 1068 (Ill. 2023) ........................................................................31

*Richison v. Ernest Grp.*,
634 F.3d 1123 (10th Cir. 2011) ..................................................................17

*Roper v. Simmons*,
543 U.S. 551 (2005) ........................................................................ 18, 21, 24

*Schrock v. Wyeth, Inc.*,
727 F.3d 1273 (10th Cir. 2013) ..................................................................28

*Shirley v. Chestnut*,
603 F.2d 805 (10th Cir. 1979) ....................................................................36

*Smith v. City of Enid*,
149 F.3d 1151 (10th Cir. 1998) ..................................................................41

*Smith v. Plati*,
258 F.3d 1167 (10th Cir. 2001) ..................................................................17

*State v. Dejaynes-Beaman*,
8 N.W.3d 779 (Neb. 2024) ..........................................................................31

*State v. Thomas*,
No. CF-1995-380A (Sequoyah Cnty. Dist. Ct. Jun. 6, 2018) ...............................1

*Thomas v. Judge of the District Court in and for Sequoyah County*,
No. MA-2018-960 (Okla. Crim. App. Nov. 21, 2018) ..........................................1

*Thomas v. State*,
No. PC-2019-116 ...........................................................................................1

*Thomas v. Stitt*,
No. 21-6011 (10th Cir. Feb. 1, 2022) .................................................................1

*United States v. Greer*,
881 F.3d 1241 (10th Cir. 2018) ..................................................................28

*United States v. Sparks*,
941 F.3d 748 (5th Cir. 2019) ........................................................................31

*White v. State*,
2021 OK CR 29, 499 P.3d 762........................................................................31

*Wilson v. Meeks*,
98 F.3d 1247 (10th Cir. 1996) ........................................................................17

**Statutes**

21 O.S. § 701.9(A) (1991) ........................................................................4, 27

28 U.S.C. § 1367(c)(3)........................................................................41

28 U.S.C. § 1915A(a)-(b)(1)........................................................................12

28 U.S.C. § 2254(d)(1)(C ........................................................................27

42 U.S.C. § 1983 ........................................................................11

57 O.S. § 332........................................................................5

57 O.S. § 332.7........................................................................12

57 O.S. § 332.7(A) ........................................................................5

57 O.S. § 332.7(E)(1)........................................................................6

57 O.S. §§ 332–332.21 ........................................................................8, 34

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................13

Fed. R. Civ. P. 56(a) ........................................................................17

Fed. R. Civ. P. 56(c) ........................................................................17

**Other Authorities**

OKLA. ADMIN. CODE 515:25-1-1 .......... 8, 34

OKLA. CONST. art. VI, § 10 .......... 5, 6, 8, 34

U.S. CONST. amend. VIII .......... 21

# GLOSSARY

| **Term** | **Abbreviation** |
| --- | --- |
| Oklahoma Pardon and Parole Board | Board or PPB |
| Oklahoma Board of Corrections | BOC |
| Oklahoma Department of Corrections | DOC |
| Governor Kevin Stitt; Executive Director of the Oklahoma Pardon and Parole Board; Chair of the Board of Corrections; and Director of the Department of Corrections | State Officials |

## STATEMENT OF PRIOR OR RELATED APPEALS

This is the second appeal in this case to reach this Court. In *Thomas v. Stitt*, No. 21-6011 (10th Cir. Feb. 1, 2022), this Court reversed the district court's dismissal of Thomas's complaint for failure to state a claim and remanded for further proceedings.

Prior to filing this federal action, Thomas sought post-conviction relief in the Oklahoma state appellate courts. In *Thomas v. Judge of the District Court in and for Sequoyah County*, No. MA-2018-960 (Okla. Crim. App. Nov. 21, 2018), the Oklahoma Court of Criminal Appeals dismissed as moot Thomas's petition for an alternative writ of mandamus, which sought to compel the district court to rule on his Application for Post-Conviction Relief, filed in *State v. Thomas*, No. CF-1995-380A (Sequoyah Cnty. Dist. Ct. Jun. 6, 2018).

In *Thomas v. State*, No. PC-2019-116 (Okla. Crim. App. Sept. 6, 2019), the Oklahoma Court of Criminal Appeals affirmed the Sequoyah County District Court's denial of Thomas's application for post-conviction relief. Thomas argued that his consecutive life sentences failed to provide a meaningful opportunity for release and therefore violated the Eighth Amendment. App. Vol. V at 34–41.

## INTRODUCTION

Plaintiff-Appellant Dwain Edward Thomas's Eighth Amendment claim rests on a fundamental misunderstanding of *Graham v. Florida*, 560 U.S. 48 (2010),

*Miller v. Alabama*, 567 U.S. 460 (2012), and the constitutional protections they provide. Thomas proceeds as though *Miller* guarantees juvenile homicide offenders a meaningful opportunity for release through parole. It does not. *Graham* announced a meaningful-opportunity rule for juvenile nonhomicide offenders, effectuated by a categorical ban on life without parole sentences. *Miller*, however, preserved the distinction between homicide and nonhomicide offenses and struck down only life without parole sentences under mandatory sentencing schemes. Neither case, nor the text of the Eighth Amendment, creates a freestanding right for juvenile homicide offenders to a particular parole process, a favorable parole recommendation, or eventual release. Nor do they invite courts to second-guess whether parole officials actually gave enough weight to youth, maturity, rehabilitation, or other factors.

That distinction resolves this appeal. Oklahoma did not have a mandatory life without parole sentencing scheme when Thomas was sentenced in 1997, and Thomas was not sentenced to life without parole. The sentencing court had discretion to impose a lesser sentence, and it did. Thomas received life with the possibility of parole for three first-degree murders committed when he was fifteen years old. He remains parole eligible and has been considered for parole by the Oklahoma Pardon and Parole Board ("Board" or "PPB") five times. Each time, the Board declined to recommend parole. Those denials do not transform his parole-eligible sentence into an Eighth Amendment violation.

The district court correctly granted summary judgment. Thomas's sentence falls outside *Graham* because he is a homicide offender. It falls outside *Miller* because he was sentenced under a discretionary scheme to life with the possibility of parole. And even if a meaningful-opportunity standard applied, Oklahoma's discretionary parole system permits consideration of youth and other mitigating circumstances. Thomas has not identified evidence creating a genuine dispute of material fact that Oklahoma law bars such consideration. The judgment should be affirmed.

## **STATEMENT OF THE ISSUES PRESENTED FOR REVIEW**

1. Whether the district court correctly held that the Eighth Amendment does not require the State to adopt specific procedures to provide special or elevated parole consideration to parole-eligible juvenile murderers.

2. Whether the district court correctly held that Thomas "has not provided evidence that Oklahoma's parole system provides him with no meaningful opportunity for release[.]" App. Vol. VIII at 152.

3. Whether the district court correctly declined to exercise supplemental jurisdiction over Thomas's state law claim.

## STATEMENT OF THE CASE

### I. THOMAS'S MURDER CONVICTIONS AND PAROLE-ELIGIBLE LIFE SENTENCES.

In 1995, when he was fifteen years old, Thomas murdered his step-father, step-grandfather, and mother. App. Vol. II at 60, 63, 65, 68; App. Vol. IV at 67, 106, 112, 118; App. Vol. VIII at 123–24.[1] In 1997, Thomas entered a guilty plea and was convicted of three counts of murder in the first degree. App. Vol. II at 39–41; App. Vol. VIII at 123–24. At the time Thomas was convicted and sentenced, Oklahoma did not have a mandatory life without parole sentencing scheme for homicide offenders, and instead district courts retained the discretion to punish "by death, by imprisonment for life without parole or by imprisonment for life." App. Vol. VIII at 124 (quoting 21 O.S. § 701.9(A) (1991)); App. Vol. II at 43; App. Vol. IV at 264–65 (conceding that "Oklahoma does not have a 'mandatory' LWOP sentencing scheme for homicide offenses"). The district court exercised that discretion and sentenced Thomas to life ***with*** the possibility of parole on all three counts, with the first two running concurrently and the third running consecutively. App. Vol. II at 39–42; App. Vol. IV at 255, 265 ("Petitioner is not serving a sentence of LWOP"); App. Vol. VII at 123–24 (conceding "[t]hat Mr. Thomas was sentenced to life with the possibility of parole"); App. Vol. VIII at 123–24. Thomas is currently eligible for parole. App.

---

[1] References to the appendix are by volume and page number. *E.g.*, App. Vol.# at [page #].

Vol. VIII at 124 ("Plaintiff is currently parole-eligible."); App. Vol. VII at 123 ("Mr. Thomas does not dispute that he is serving three life sentences and that he is currently eligible for parole consideration . . . .").

## II. OKLAHOMA'S PAROLE PROCESS AND THOMAS'S REPEATED PAROLE CONSIDERATION.

Under the Oklahoma Constitution, parole and other forms of clemency for violent offenders like Thomas proceed through a two-part process. *See* OKLA. CONST. art. VI, § 10. The Constitution vests within the Governor the ultimate authority to grant commutations, pardons, and paroles for such offenders. *Id.* But the Governor may *only* grant—and even consider—commutations, pardons, or paroles upon a favorable recommendation from the Oklahoma Pardon and Parole Board. *Id.*; 57 O.S. § 332. So, violent offenders must first receive a recommendation for parole by the Board and second the Governor must grant that parole.

Thomas first became eligible for parole consideration in 2010, after completing one-third (1/3), or fifteen (15) years, of his life sentence. App. Vol. VIII at 124 (citing 57 O.S. § 332.7(A)); App. Vol. II at 43 ("Petitioner is eligible for parole consideration after serving fifteen years of each of his consecutive life sentences."); *id.* at 54 (ballot sheet showing Thomas was considered for parole on the October 2010 parole docket). In fact, contemporaneous with his sentencing in 1997, the Board calculated that Thomas would be eligible for parole in December of 2010 and

informed Thomas he would be eligible to apply for parole on the October 2010 parole docket. *Id.* at 49–50.

In total, Thomas has been considered for and denied parole by the Board at least five times: October of 2010; October of 2013; October of 2016; October of 2019; and October of 2022. App. Vol. VIII at 124; App. Vol. II at 54, 58–59, 66–67; App. Vol. VII at 123.[2] Thomas can be reconsidered for parole every three years, and was eligible to apply for parole consideration again in October 2025. App. Vol. VIII at 124; 57 O.S. § 332.7(E)(1). Because the Governor has never received a favorable recommendation by the Board for Thomas's parole, the Governor has never considered granting or denying Thomas parole. *See* OKLA. CONST. art. VI, § 10.[3]

Before an inmate is considered for parole by the Board, the inmate has the opportunity submit information to a parole investigator. App. Vol. VIII at 124; App. Vol. II at 76–96. The investigator conducts interviews with the inmate, either face-to-face, via telephone, or using interview questionnaires. App. Vol. VIII at 124–25; App. Vol. II at 97–103. The investigator prepares an investigative report, which provides "[t]he information that would be needed to know the individual's age at the

---

[2] Thomas was also considered for and denied parole again on the October 2025 docket, after the district court granted summary judgment. *See* Br. at 21 n.8.

[3] Thomas's Statement of Facts contains a lengthy discussion of Oklahoma's parole procedures and his own parole history. Thomas's presentation is incomplete and selectively emphasizes certain aspects while downplaying or omitting others. The relevant facts are set forth below as necessary to the legal analysis, and are addressed more fully in the Argument section of this brief.

time the crime was committed[,]" for the Board to review. App. Vol. II at 118; *see also id.* at 110–116, 119–20, 123–24. The investigative report includes the name, date of birth, and gender of the inmate; reception date and information about current and prior incarcerations; information about the controlling case to provide sufficient offense context, including the case number, county, offense, and sentence; a version of the offense paraphrasing the interview with the offender and provided from the district attorney; disciplinary or misconduct information; programs completed; and other information. App. Vol. VIII at 125; App. Vol. II at 51–53, 55–57, 60–65, 68–70. "[I]t was common for" parole investigators to include the fact that "an inmate [] was a juvenile at the time of their arrest . . . in the investigator recommendation" section of the investigative report. App. Vol. II at 115; *see also id.* at 62, 65.

In each of Thomas's five investigative reports, his birth year (1980) and case file year (1995) reveal that he was 15 years old at the time the charges were filed against him. App. Vol. VIII at 127 (citing App. Vol. IV at 106–08, 112–14, 118–20, 121–23, 125–27). In Thomas's investigative reports in 2016 and 2019, the investigator noted that Thomas was fifteen years old at the time of the murders. App. Vol. VIII at 127; App. Vol. II at 62, 65. Further, in each of Thomas's investigative reports, the personal information or risk assessment sections include that he was a high school student or 16 years or younger when arrested. App. Vol. VIII at 127; App. Vol. II at 53, 56, 61, 65, 70. In sum, Thomas's juvenile status at the time of the

murders was readily available or apparent in the documentation every time he has been considered for parole by the Board.

When considering whether to recommend parole and other forms of clemency to the Governor, the Board reviews the investigator report and any opposition or support letters from the public. App. Vol. VIII at 125; App. Vol. II at 74–75, 105, 108–09, 122. If the Board ultimately recommends parole, that same information is provided to the Governor. App. Vol. II at 133. Thomas himself sent a support letter when he was being considered for parole in 2019, noting that his crimes were "committed at 15 years of age . . . ." *Id.* at 127–28.

Nothing in Oklahoma law prevents the Board (or the Governor) from considering any specific fact or circumstance, including youth of the offender, in exercising its parole discretion. App. Vol. VIII at 125–26; App. Vol. I at 40 ("There are no substantive statutory or regulatory factors guiding or limiting the Governor's decision-making regarding parole."); App. Vol. II at 118 ("[A] PPB member could consider an inmate's age at the time of the underlying offense as a part of their consideration to grant or deny parole . . . ."); OKLA. CONST. art. VI, § 10; 57 O.S. §§ 332–332.21; OKLA. ADMIN. CODE 515:25-1-1, *et seq*. Likewise, nothing in Oklahoma law compels the Board (or the Governor) to consider any specific fact or circumstance, including youth of the offender, in exercising its parole discretion. *Id.*

Board members deposed by Thomas testified that they routinely calculate and consider an inmate's youth at the time of the offense as a factor in deciding whether to recommend parole. App. Vol. VIII at 126–27. Former Board member Kelly Doyle testified that she calculated the inmate's age at the time of the offense because she found "age of the inmate at the time of the underlying offense" "to be an important factor in [her] decision making." *Id.* at 127; App. Vol. II at 123. Former Board member Adam Luck testified he would have reviewed the entire investigative report and considered the recommendation, which included Thomas's age, "[s]imilar to all the other information included in the investigative report. . . . [I]t provides information to include in making a decision." App. Vol. II at 117.

In addition to his age, the materials before the Board recorded a significant misconduct history during Thomas's custody, which is a direct proxy for demonstrated maturity and rehabilitation. Parole investigative reports showed Thomas had received numerous misconducts during his incarceration, including ten Class X misconducts for possessing weapons (3 in 1999), battery of an inmate (1999), battery of an employee (1998 & 1999), threatening to sexually assault a female employee (1999), testing positive for methamphetamines (2017), and making homemade intoxicants (2000 & 2020). App. Vol. VIII at 127–29; App. Vol. II at 52, 56, 61, 64, 69. By the time Thomas was considered for parole again in 2022, he had accumulated seventeen misconduct reports, two of which occurred in the preceding

year. App. Vol. II at 69. Parole investigators recommended denying parole in 2010, 2013, and 2022 based on the violent nature of the offenses and Thomas's "consistent pattern of misconducts" while incarcerated. *Id.* at 53, 57, 70.[4]

At the same time, parole materials were not categorically adverse to Thomas, as the full DOC field file summarized both his positive achievements and his continuing adult misconducts. In 2016 and 2019, parole investigators recommended parole, emphasizing his youth at the time of the crimes, observing that "[i]n spite of what was clearly a difficult adjustment for Thomas, he has made a stronger effort to present with appropriate behavior," and identifying several programs and certifications he completed while incarcerated. *Id.* at 65; *see also id.* at 62.

## III. PROCEDURAL HISTORY AND THE DISTRICT COURT'S SUMMARY-JUDGMENT RULING.

Prior to launching the instant case, Thomas first sought post-conviction relief in Oklahoma state court on the same grounds he argues here. App. Vol. II at 42–43. Thomas filed his application for post-conviction relief in Sequoyah County District Court on June 7, 2018, arguing that his sentence violated the Eighth Amendment under *Graham*, 560 U.S. at 48, *Miller*, 567 U.S. at 460, *Montgomery v. Louisiana*, 577 U.S. 190 (2016), *Budder v. Addison*, 851 F.3d 1047 (10th Cir. 2017), and other state cases. App. Vol. III at 116, 122. There, like here, Thomas argued that the Eighth

---

[4] Thomas's "airbrushed" timeline rests on material omissions that distort the record the district court reviewed and cited.

Amendment affords juvenile homicide offenders "a 'meaningful and realistic' opportunity for release during their lifetime[,]" and that his sentence violates those principles "because Oklahoma's parole system fails to meet the most basic requirements of a 'meaningful' and 'realistic' opportunity [for release]." *Id.* at 123, 129. On December 27, 2018, the state district court entered its order denying Thomas's application for post-conviction relief. *Id.* at 118. The Oklahoma Court of Criminal Appeals affirmed the district court's denial of post-conviction relief on September 6, 2019, confirming that because Thomas "is eligible for parole consideration after serving fifteen years of each of his consecutive life sentences[,]" he "has a material opportunity to obtain release on parole during his natural lifetime . . . ." App. Vol. II at 43–44.

After the Oklahoma Court of Criminal Appeals affirmed the denial of post-conviction relief and the Board denied parole on the October 2019 docket, Thomas initiated this federal district court action *pro se* in September of 2020 against Defendants-Appellees Governor Kevin Stitt, the Executive Director of the Oklahoma Pardon and Parole Board, the Chair of the Oklahoma Board of Corrections ("BOC"), and the Director of the Oklahoma Department of Corrections ("DOC") (hereinafter collectively "State Officials"). App. Vol. I at 17. Thomas brought a claim for relief under 42 U.S.C. § 1983 and sought declarative and injunctive relief that State Officials violated the Eighth Amendment by denying him

a meaningful opportunity for release. *Id.* at 24, 28–29, 36. Thomas also alleged a violation of Article II, Section 9 of the Oklahoma Constitution—the state equivalent to the U.S. Constitution's Eighth Amendment—and challenged the constitutionality of 57 O.S. § 332.7, the state statute establishing eligibility and administrative procedures for parole. *Id.* at 56–57. Thomas's principal complaint, like the argument raised in his state court post-conviction relief proceeding, is that Oklahoma's parole system denies him a meaningful opportunity for release and does not mandate its decision-makers specifically consider the youth status of the offender applicant. *Id.* at 57 (complaining that "§ 332. 7 mandates that the PPB considers for parole individuals sentenced to Life ***irrespective of any consideration of the youth status of the offender***.") (emphasis added). Thomas also challenged the Governor's parole authority, claiming that the lack of standards violated the Eighth Amendment because nothing *requires* the Governor to consider juvenile status or rehabilitation. *Id.* at 40, 54–58.

Upon screening required by 28 U.S.C. § 1915A(a)-(b)(1), the district court initially dismissed the complaint for failure to state a claim, adopting the magistrate judge's recommendation. App. Vol. I at 104–06. This Court reversed that dismissal on appeal and remanded the case for further proceedings, concluding Thomas "has stated plausible claims for relief." *Id.* at 115–16, 123–24. In doing so, this Court was careful not to pre-judge the merits: "This is not to say that Mr. Thomas will prevail

. . . .” *Id.* at 124. But it expressed reservation over (1) the “complex issues of first impression” presented in the complaint and (2) that dismissal deprived Thomas of the opportunity “to develop the facts and [his] legal arguments.” *Id.* at 123. The Court was particularly concerned given “Mr. Thomas maintains that he has been a model prisoner[,]” “has consistently demonstrated good behavior[,]” and had been “given favorable recommendations to the PPB based on his demonstrated good behavior.” *Id.* at 117, 118. Of course, that ultimately did not prove true. *See supra* p. 10.

After remand, State Officials moved for dismissal under Federal Rule 12(b)(6), arguing Thomas’s claims were barred by his failure to exhaust administrative remedies, his failure to comply with the Oklahoma Governmental Tort Claims Act, and sovereign immunity, while also echoing the magistrate’s conclusion that Thomas failed to state a claim for violation of the Eighth Amendment. *See id.* at 127–28. While the magistrate judge again recommended dismissal, the district court ultimately declined to dismiss Thomas’s complaint, in part observing it was “compelled to conclude that dismissal for failure to state a claim is not appropriate” by this Court’s prior ruling. *See id.* at 201, 255, 257.

State Officials then moved for summary judgment, filing their four separate motions on or around August 30, 2024. App. Vol. II at 1, 142; App. Vol. III at 179; App. Vol. IV at 8. In his Motion for Summary Judgment, Governor Stitt challenged

Thomas's Article III standing, in addition to arguing that Thomas could not as a matter of law establish an Eighth Amendment violation. App. Vol. II at 8–9. The remaining State Officials further argued that Thomas's claims were barred by *res judicata* and his failure to exhaust administrative remedies.

The district court granted State Officials' motions for summary judgment on September 5, 2025, and entered judgment in their favor. *See* App. Vol. VIII at 121, 153. The district court held that Thomas "has not established a genuine dispute of material fact with respect to his Eighth Amendment claims premised on *Miller*" or "provided evidence that Oklahoma's parole system provides him with no meaningful opportunity for release, such that he is serving the functional equivalent of a mandatory life-without-parole sentence." *Id.* at 152.[5]

In holding Thomas could not establish an Eighth Amendment claim, the district court first explained that Thomas's life *with* the possibility of parole sentence did not violate *Miller* because "*Miller* only requires that a sentencer consider a juvenile homicide offender's 'youth and attendant circumstances' prior to imposing a life-*without*-parole sentence." *Id.* at 147. The court therefore observed that Thomas's "claim that *Miller* entitles him, a juvenile homicide offender sentenced to

[5] The district court found that State Officials waived their claim preclusion and issue preclusion arguments, and that the Prison Litigation Reform Act's exhaustion requirement was inapplicable to Thomas's claims. App. Vol. VIII at 132, 134.

life with the possibility of parole, to certain parole procedures necessarily requires an expansion of *Miller*'s holding, which this Court declines to do." *Id.* at 149.

Next, the district court went further, holding that even if *Miller* barred "the functional equivalent of a mandatory life-without-parole sentence," through "a sham parole system[,]" Thomas still could not establish his constitutional claim. *Id.* at 149–52. Thomas "has not come forth with evidence establishing a policy or practice that prevents him from being granted parole under Oklahoma's parole system" or "that the PPB would refuse to grant Plaintiff a recommendation for parole regardless of the circumstances." *Id.* at 149–50. The fact the Board "is not required to consider age at the time of the offense—but is merely permitted to do so—does not render Oklahoma's parole system unconstitutional as applied to Plaintiff." *Id.* at 150–51. And DOC's prison placement policies do not "render him ineligible for parole, or [show] that he is incapable of showing his rehabilitation as a result of the policies." *Id.* at 151.

Notably, the district court agreed with Governor Stitt that Thomas lacked standing to challenge the Governor's role in the clemency process, *i.e.* to challenge the constitutionality of the Governor's exclusive discretion to grant or deny parole recommendations. *Id.* at 136–37. The court found Thomas's injury too "speculative and insufficient to confer standing" given "[t]he Governor's discretion to grant parole recommendations is entirely contingent on first receiving a favorable

recommendation by the PPB," and Governor Stitt had "never received a favorable recommendation by the PPB for Plaintiff's parole." *Id.* at 137. The court also agreed that any "claim related to the Governor's exclusive authority to grant parole to violent offenders is not ripe because Plaintiff has not been recommended for parole by the PPB." *Id.* at 143. Thomas does not appeal that ruling. Plaintiff-Appellant's Opening Brief ("Br.") at 30 n.14 ("The district court concluded that Thomas did not have standing with respect to his claims against Defendant-Appellee Kevin Stitt, the Governor of Oklahoma. . . . Thomas does not appeal this conclusion."). Thus, the only claims that remain involve Oklahoma's parole system as a whole.[6]

The district court also noted that Thomas did not seek class certification and held he lacked "standing to bring claims as to 'similarly situated' individuals." *Id.* at 134–35. Thomas could not avoid that "outcome by claiming—for the first time—that he also brings a facial challenge to Oklahoma's parole statutes." *Id.* at 135. After all, Thomas had "only described his claims as as-applied challenges[,]" "never explains how Oklahoma's parole statutes are unconstitutional on their face[,]" and had "not argued that Oklahoma's parole system is unconstitutional in all, or virtually all, of its applications." *Id.* at 135–36 & n.9.

---

[6] The district court found that "Governor Stitt is sufficiently connected to the enforcement of the challenged parole procedures for which Plaintiff has established an injury-in-fact." App. Vol. VIII at 140.

## STANDARD OF REVIEW

This Court reviews disposition of a motion for summary judgment under Rule 56(c) *de novo*, applying the same standards as the district court. *See Wilson v. Meeks*, 98 F.3d 1247, 1252 (10th Cir. 1996). Summary judgment is properly granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although the court views the facts and evidence in the light most favorable to the non-moving party, that party "cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988). In other words, "[t]he litigant must bring to the district court's attention some affirmative indication that his version of relevant events is not fanciful." *Id.*; *see also* Fed. R. Civ. P. 56(c).

This Court has also recognized a "preference for affirmance" that flows "from the deference we owe to the district courts and the judgments they reach . . . ." *Richison v. Ernest Grp.*, 634 F.3d 1123, 1130 (10th Cir. 2011). As such, this Court is "free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001) (citation omitted). An appellee "may defend the judgment won below on any ground supported by the

record without filing a cross-appeal." *In re Robinson,* 921 F.2d 252, 253 (10th Cir. 1990).

## SUMMARY OF THE ARGUMENT

The touchstone of the Eighth Amendment is proportionality of punishment. For juvenile offenders, the Supreme Court applies that principle by looking to the sentence and the circumstances under which it was imposed. Thomas's claim, both below and on appeal, loses sight of that basic premise. Thomas's sentence is not disproportionate under any controlling precedent. He was not sentenced to death, so *Roper v. Simmons*, 543 U.S. 551 (2005) does not apply. He was convicted of three murders, so the categorical rule for juvenile nonhomicide offenders announced in *Graham*, 560 U.S. at 48 does not apply. And he was not sentenced under a mandatory life without parole scheme, so *Miller*, 567 U.S. at 460 does not apply. Thomas was sentenced to life with the possibility of parole for homicide offenses under a discretionary sentencing scheme and remains parole eligible. That is enough to affirm.

Thomas attempts to avoid this dispositive problem by contorting *Graham's* front-end sentencing rule for juvenile nonhomicide offenders into a back-end constitutional entitlement to special parole procedures for juvenile homicide offenders. The district court correctly rejected that theory. Thomas's appeal asks this Court to do what the Supreme Court has repeatedly declined to do: convert the

Eighth Amendment's juvenile-sentencing cases into a federal mandate to supervise state parole decisions. This Court should reject that invitation for two reasons.

First, *Miller* prohibits only mandatory life without parole sentencing schemes for juvenile homicide offenders. *Miller* does not, as Thomas claims, guarantee juvenile homicide offenders a meaningful opportunity for release through parole. Thomas's framing erases the distinction the Supreme Court preserved in *Graham* and *Miller*: juvenile homicide and nonhomicide offenses are subject to different constitutional standards. *Graham* drew that line by imposing a categorical bar on life without parole sentences for juvenile nonhomicide offenders. *Miller* preserved it by adopting a narrower rule for juvenile homicide offenders. Indeed, *Miller* expressly declined to categorically bar life without parole sentences for juvenile homicide offenders, barring only *mandatory* sentencing schemes. If a sentencing court may impose life without parole on a juvenile homicide offender under *Miller*, then a parole-eligible life sentence necessarily satisfies *Miller*.

At base, Thomas is not asking this Court to enforce *Miller*. He is asking this Court to contrive a new *Graham*-style post-sentencing parole right for juvenile homicide offenders—shifting the focus away from sentencing and punishment, the Eighth Amendment's concern, and toward judicial second-guessing of parole after sentencing. That theory is foreclosed by *Graham*, *Miller*, *Jones v. Mississippi*, 593

U.S. 98 (2021), and *Davis v. McCollum*, 798 F.3d 1317 (10th Cir. 2015). Thomas's attempted expansion of *Miller* fails as a matter of law.

Second, even if *Miller* applies, or some meaningful opportunity for parole were constitutionally required under the Eighth Amendment, the district court correctly held that Oklahoma's discretionary parole system satisfies it. Eligibility for parole under a system that gives decision-makers broad discretion to consider youth, maturity, rehabilitation, or other mitigating factors is all *Graham*, *Miller*, and their progeny require. Nothing in Supreme Court precedent supports Thomas's invitation to peek behind the curtain of state parole decisions to determine whether a juvenile offender has been given "enough" process or opportunity to demonstrate maturity and rehabilitation.

Thomas's contrary theory would convert parole eligibility into a judicial audit of every parole decision. It would require federal courts to second-guess how state officials weighed youth, rehabilitation, and other factors. But the Eighth Amendment does not guarantee eventual release, a favorable parole recommendation, or a parole process that makes rehabilitation the controlling factor. Because parole eligibility itself provides the constitutionally required opportunity, and because Thomas failed to create a genuine issue of material fact over whether Oklahoma's parole system bars consideration of youth or similar mitigating factors, the district court correctly granted summary judgment. This Court should affirm.

## ARGUMENT

The Eighth Amendment to the U.S. Constitution prevents the infliction of "cruel and unusual punishments" and thus "guarantees individuals the right not to be subjected to excessive sanctions." U.S. CONST. amend. VIII; *Roper*, 543 U.S. at 560. Proportionality of punishment is the touchstone of the Eighth Amendment. *Graham*, 560 U.S. at 59. When it comes to punishment for juveniles, the Supreme Court has articulated through a series of cases that "youth matters in sentencing." *Jones*, 593 U.S. at 105. But the Court has never articulated that "a parole system that does not in fact provide juvenile offenders with a 'meaningful opportunity for release' is simply inadequate under the Eighth Amendment." Br. at 4–5.

Starting with *Roper*, the Supreme Court held that capital punishment for juvenile murders violated the Eighth Amendment. In *Graham*, the Supreme Court held that life without parole sentences for juveniles who committed *non-homicide* offenses violated the Eighth Amendment. And then in *Miller*, 567 U.S. at 460, the Supreme Court held that mandatory life without parole sentencing schemes for juvenile murderers violated the Eighth Amendment.

Here, the undisputed fact that Thomas was sentenced to life *with* the possibility of parole for the three murders he committed as a juvenile is fatal to his Eighth Amendment claim. As a matter of law, Thomas cannot establish a *Roper* claim because he was not given capital punishment. As a matter of law, Thomas

cannot establish a *Graham* claim because he committed three homicide offenses. By its own terms, *Graham* has no application in juvenile sentences for homicide offenses. *See id.* at 82 ("The Constitution prohibits the imposition of a life without parole sentence on a juvenile offender *who did not commit homicide*." (emphasis added)); *Miller*, 567 U.S. at 475; *Montgomery*, 577 U.S. at 206 (describing that *Graham* "held that the Eighth Amendment bars life without parole for juvenile nonhomicide offenders"); *Budder*, 851 F.3d at 1054 (10th Cir. 2017) ("[T]he Court in Graham announced a categorical rule, not a fact-specific holding.").

Thus, Thomas's sole legal claim for an Eighth Amendment violation ultimately rests on an impermissible extension of *Miller*. As a matter of law, Thomas cannot establish a *Miller* claim because he was not sentenced under a mandatory life without parole sentencing scheme and is eligible for parole consideration. This Court should affirm.

## I. THE DISTRICT COURT CORRECTLY REJECTED THOMAS'S UNWARRANTED EXPANSION OF *MILLER*.

The district court correctly held that Thomas could not establish a *Miller* Eighth Amendment "violation because he was a juvenile homicide offender sentenced to life with the possibility of parole, and *Miller* only requires that a sentencer consider a juvenile homicide offender's 'youth and attendant circumstances' prior to imposing a life-without-parole sentence." App. Vol. VIII at

147. Thomas's argument to the contrary rests on a fundamental misunderstanding of what *Miller* does, and does not, protect.

### *A. Miller Prohibits Mandatory Life Without Parole, Not Parole-Eligible Life Sentences.*

Thomas repeatedly argues that *Miller*, 567 U.S. at 460 guarantees juvenile homicide offenders a "meaningful opportunity for release." *See* Br. at 33 ("the Oklahoma parole system has failed to provide Thomas and other juvenile offenders with a realistic and meaningful opportunity for parole, in violation of the Eighth Amendment."); *id.* at 34 ("the question is whether Oklahoma's system provides Thomas (and others like him) a ***meaningful*** opportunity for release based on demonstrated maturity and rehabilitation . . . ."); *id.* at 35 ("A parole process that functionally withholds a "meaningful opportunity to obtain release" for juvenile offenders cannot provide Thomas—or the other juvenile offenders in Oklahoma's system—with the protections required by the Eighth Amendment."). Thomas is emphatic that "for juvenile [homicide] offenders, a parole opportunity is a constitutional *requirement* necessary to 'ensure[] that juveniles whose crimes reflected only transient immaturity—and who have since matured—will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment.'" Br. at 38 (quoting *Montgomery*, 577 U.S. at 212).

But *Miller* says nothing of the sort. *Miller* held only "that the Eighth Amendment forbids ***a sentencing scheme*** that mandates life in prison without

possibility of parole for juvenile offenders." *Id.* at 479 (emphasis added). In striking down these mandatory life without parole sentencing schemes, the Supreme Court reasoned that "mandatory penalties, by their nature, preclude a sentencer from taking account of an offender's age and the wealth of characteristics and circumstances attendant to it." *Id.* at 476. By preventing the sentencer from considering the offender's age and its hallmark features, a mandatory life without parole "scheme poses too great a risk of disproportionate punishment." *Id.* at 479. Put another way:

> By requiring that all children convicted of homicide receive lifetime incarceration without possibility of parole, regardless of their age and age-related characteristics and the nature of their crimes, the mandatory-sentencing schemes before us violate this principle of proportionality, and so the Eighth Amendment's ban on cruel and unusual punishment.

*Id.* at 489. Thus, "a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." *Id.*

Critically, *Miller* expressly disclaimed a categorial rule. The Court made clear that it "do[es] not foreclose a sentencer's ability to make that judgment" to impose "this harshest possible penalty" and "does not categorically bar a penalty for a class of offenders or type of crime—as, for example, we did in *Roper* or *Graham*." *Id.* at 480, 483. The Court repeatedly and carefully framed its holding as prohibiting life without parole sentences under *mandatory* sentencing schemes. *See, e.g., id.* at 470, 474–77, 479, 487, 489 (referencing "mandatory life-without-parole sentences[,]" "mandatory penalty schemes[,]" "mandatory scheme[s,]" "a sentencing scheme that

mandates life in prison without possibility of parole[,]" and "mandatory-sentencing schemes").

Notably absent from even the liveliest language of *Miller* is any indication that life without parole sentences are themselves categorically unconstitutional. No doubt, the Supreme Court could have articulated that principle if it so intended. When the issue came before the Supreme Court again in *Montgomery*, 577 U.S. at 190, the Court could have articulated a categorical bar on life without parole sentences. Instead, the Court reiterated that "*Miller* did not foreclose a sentencer's ability to impose life without parole on a juvenile . . . ." *Id*. at 195. If a sentencing court may constitutionally impose life without parole on a juvenile homicide offender under *Miller*, then a parole-eligible life sentence necessarily satisfies *Miller*.

Rather than confront this dispositive limitation, Thomas obscures the fact he is a homicide offender and blurs the critical distinction the Supreme Court has drawn between homicide and nonhomicide offenses. He repeatedly attributes *Graham's* "meaningful opportunity for release" language to *Miller*, as though *Miller* had adopted that rule for juvenile homicide offenders. *See, e.g.,* Br. at 38. But that language comes from *Graham*, a nonhomicide case, and it appears in *Miller* only once: in an explanatory parenthetical quoting *Graham* following a "Cf." citation. *See Miller*, 567 U.S. at 479 ("Cf. *Graham,* 560 U.S., at 75, 130 S.Ct., at 2030 ('A

State is not required to guarantee eventual freedom,' but must provide 'some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation')."). 

Thomas's disingenuous framing therefore attempts to erase the very distinction the Supreme Court preserved in *Graham* and *Miller*: juvenile homicide and non-homicide offenses are subject to different constitutional standards. *Graham* drew a clear line "between homicide and other serious violent offenses against the individual." *Graham*, 560 U.S. at 69. *Miller* expressly preserved that line, explaining that "*Graham*'s flat ban on life without parole applied only to nonhomicide crimes," and therefore adopted a narrower, noncategorical rule forbidding mandatory life without parole sentencing schemes for juvenile homicide offenders. *Miller*, 567 U.S. at 473, 477.

Had *Miller* intended to guarantee juvenile homicide offenders a meaningful opportunity for release, it would have announced a categorical prohibition against life without parole sentences as *Graham* did. It did not. Had *Miller* intended to superimpose the same standard for non-homicide offenders in *Graham* onto homicide offenders, it would have done so. It did not. In sum, *Miller* does not guarantee juvenile homicide offenders a meaningful opportunity for release; it prohibits only mandatory life without parole sentencing schemes. Nothing in *Miller* supports Thomas's claim that juvenile homicide offenders sentenced under

discretionary schemes are constitutionally entitled to a *Graham*-style post-sentencing parole right that provides "the theoretical and the actual opportunity to obtain parole." Br. at 39.

There is no dispute that Oklahoma did not impose a mandatory life without parole sentence on Thomas in 1997, and Thomas does not complain about a lack of individualized assessment at sentencing.[7] App. Vol. VIII at 123-24 (quoting 21 O.S. § 701.9(A) (1991); App. Vol. II at 39-43; App. Vol. IV at 264-65; App. Vol. VII at 123-24. Nor does Thomas dispute he was sentenced to life *with* the possibility of parole, remains eligible for parole, and has been considered for parole by the Board on at least **five (5) occasions**. *Compare* App. Vol. II at 11, 54, 58–59, 66–67 *with* App. Vol. VII at 123–24. The Oklahoma Court of Criminal Appeals specifically found Thomas committed his murders "in 1995 before the statute was enacted requiring service of a minimum percentage of his sentences[,]" and was therefore

[7] Indeed, Thomas cannot challenge his conviction or sentence because such a collateral attack on the final judgment of the Oklahoma Court of Criminal Appeals that Thomas "has a material opportunity to obtain release on parole during his natural lifetime from his sentences[,]" App. Vol. II at 43, would concede 1983 claim is really one for post-conviction relief. Of course, any post-conviction claim fails for another reason: it is permanently time-barred. *See, e.g.*, 28 U.S.C. § 2254(d)(1)(C); *Montgomery*, 577 U.S. at 212; *Dodd v. United States*, 545 U.S. 353, 356-60 (2005).

"eligible for parole consideration after serving fifteen years of each of his consecutive life sentences." App. Vol. II at 43.[8]

That ends Thomas's *Miller* claim. Because Thomas, a juvenile triple-homicide offender, was sentenced to life *with* the possibility of parole under a discretionary sentencing scheme, he cannot establish a *Miller* violation as a matter of law. This Court should affirm the district court's ruling and reject Thomas's invitation to impermissibly expand *Miller* into a *Graham*-style post-sentencing parole right for juvenile homicide offenders, a position the Supreme Court deliberately declined to adopt in both *Graham* and *Miller*.

### *B.* **Jones** ***and this Court's Precedent Foreclose Thomas's Attempt to Expand*** **Miller.**

Beyond the plain text and holdings of *Graham* and *Miller*, Thomas's invitation to expand *Miller's* logic "beyond invalidating mandatory life-without-parole sentencing schemes for juveniles" must be rejected in light of subsequent Supreme Court precedent and this Court's own decisions. *United States v. Greer*, 881 F.3d 1241, 1248 (10th Cir. 2018) (citation omitted).

The Supreme Court confirmed the narrow scope and application of *Miller* in *Jones*, 593 U.S. at 98. There, a juvenile homicide offender argued that a sentencing

---

[8] This Court would be bound by that construction of state law, if Thomas had not already conceded it. *Compare Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975); *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) *with* App. Vol. VII at 122–24.

authority's discretion to consider youth and impose a lesser sentence than life without parole did not satisfy *Miller*. *Id.* at 103–04. The inmate argued that *Miller* required the sentencing authority to "either (i) make a separate factual finding of permanent incorrigibility, or (ii) at least provide an on-the-record sentencing explanation with an 'implicit finding' of permanent incorrigibility." *Id.* (citation omitted). The Supreme Court squarely rejected that argument, clarifying that "[i]n a case involving an individual who was under 18 when he or she committed a homicide, a State's discretionary sentencing system is both constitutionally necessary and constitutionally sufficient." *Id.* at 105.[9] In other words, *Jones* confirmed that *Miller* demands nothing more than a discretionary sentencing procedure for juvenile murderers, which is satisfied so long as a sentencing authority has "discretion to consider youth before imposing a life-without-parole sentence . . . ." *Id.* at 109.

In holding that separate fact findings and on-the-record explanations are not required before sentencing juvenile murders to life without parole, *Jones* reaffirmed that *Miller* did not "impose a categorical bar against life without parole for murderers under 18." *Id.* Instead, discretionary sentencing procedures are sufficient because "the sentencer will necessarily consider relevant mitigating circumstances, including

[9] The Supreme Court also expressly found that "*Montgomery* did not . . . add to *Miller*'s requirements" *Id.* at 109.

the defendant's youth *Id.* at 116. Thus, "a sentencing explanation is [] not necessary to ensure that the sentencer in juvenile life-without-parole cases considers the defendant's youth" because the discretion alone "suffices to ensure individualized consideration of a defendant's youth . . . ." *Id.* at 116, 118; *see also id.* at 111–12 ("The key assumption of both *Miller* and *Montgomery* was that discretionary sentencing allows the sentencer to consider the defendant's youth, and thereby helps ensure that life-without-parole sentences are imposed only in cases where that sentence is appropriate in light of the defendant's age."). To hold otherwise would "intrud[e] more than necessary upon the States' sovereign administration of their criminal justice systems." *Id.* at 117 (quoting *Montgomery*, 577 U.S. at 211.

Even before *Jones*, this Court rejected invitations to expand *Miller* beyond its terms. This Court explained that "*Miller* invalidated sentencing schemes stripping 'the sentencing authority' of 'discretion to impose a different punishment' than life without possibility of parole on a juvenile offender." *Davis*, 798 F.3d at 1320 (citation omitted). Yet "*Miller* said nothing about non-mandatory life-without-parole sentencing schemes and thus cannot warrant granting relief from a life-without-parole sentence imposed under such a scheme." *Id.* at 1321. In other words, the right in *Miller* "is narrowly drawn: it protects juveniles who commit crimes from the mandatory imposition of life without the possibility of parole." *Id.*

The majority of circuits have likewise held that discretionary life without parole juvenile sentences do not violate *Miller*. *See Davis*, 798 F.3d at 1321; *United States v. Sparks*, 941 F.3d 748, 753–54 (5th Cir. 2019) (collecting cases). As the Fifth Circuit summarized: “if a sentencing court has the option to choose a sentence other than life without parole, it can choose life without parole without violating *Miller*.” *Sparks*, 941 F.3d at 754. In the wake of *Jones*, the narrow scope of *Miller* is now unmistakable. *See, e.g., White v. State*, 2021 OK CR 29, ¶ 6, 499 P.3d 762, 766; *State v. Dejaynes-Beaman*, 8 N.W.3d 779, 784 (Neb. 2024); *People v. Wilson*, 220 N.E.3d 1068, 1076–77 (Ill. 2023) (collecting cases).

Thomas was not sentenced to life without the possibility of parole. Plainly, “sentences of life *with* the possibility of parole or early release do not implicate *Miller*.” *Sparks*, 941 F.3d at 754. Because Thomas was not sentenced under a mandatory life without parole sentencing scheme, and is actually eligible for parole—having already been considered for parole on multiple occasions—under a discretionary sentencing regime that afforded the sentencer the opportunity to consider his youth, he cannot establish an Eighth Amendment violation. *Graham* excludes it, *Miller* precludes it, *Jones* confirms it, and *Davis* forecloses it. This Court should affirm the district court below.

## II. EVEN IF *MILLER* WERE IMPLICATED, THE DISTRICT COURT CORRECTLY HELD THAT OKLAHOMA'S DISCRETIONARY PAROLE SYSTEM DOES NOT VIOLATE THE EIGHTH AMENDMENT.

Even if this Court accepted Thomas's expansive interpretation of *Miller*, the district court below correctly held that he failed to "provide[] evidence that Oklahoma's parole system provides him with no meaningful opportunity for release, such that he is serving the functional equivalent of a mandatory life-without-parole sentence" or "establish[] a genuine dispute of material fact. . . ." App. Vol. VIII at 152. In other words, even if a meaningful-opportunity standard applies, Oklahoma's discretionary parole system satisfies that standard, and Thomas has failed to create a genuine issue of material fact to the contrary.

### *A. Oklahoma's Discretionary Parole System that Allows Consideration of Youth and Other Mitigating Factors Satisfies* **Graham, Miller,** *and* **Jones.**

Even if Thomas could somehow establish his life sentence implicated *Miller*, the undisputed fact that Thomas is eligible for parole under a discretionary parole system remedies any potential violation. No more is required, and no further scrutiny is permissible by this Court. The Supreme Court made plain in *Montgomery*, 577 U.S. at 212 that "[a] State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." After all, "[a]llowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity—and who have since

matured—will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment." *Id.*

And again, if the harshest available juvenile sentence (life without parole) passes constitutional muster so long as it was not mandatory, *see supra* Section I(A), then a lesser parole-eligible sentence certainly passes constitutional muster. Even *Graham* acknowledged that when it comes to non-homicide offenders, the Eighth Amendment "does not require the State to release that offender during his natural life" and "does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life." 560 U.S. at 75. Indeed, the Court acknowledged that the categorical prohibition on life without parole sentences for non-homicide offenses itself "gives all juvenile nonhomicide offenders a chance to demonstrate maturity and reform." *Id.* at 79. Thus, to the extent this Court could reach Thomas's meaningful opportunity for parole argument, the mere fact that Oklahoma affords Thomas repeated opportunities for parole consideration defeats his Eighth Amendment claim. Nothing in precedent supports an argument that more than consideration for parole is required to pass constitutional muster.

That is especially true because Oklahoma's parole system is highly discretionary, and preserves both the offender and the decision-makers' ability to demonstrate and consider mitigating circumstances including youth. Thomas can

point to nothing in Oklahoma law that prevents the Board (or the Governor) from considering any fact or circumstance, including youth of the offender, in exercising the discretion to recommend (or grant) executive clemency. *See* OKLA. CONST. art. VI, § 10; 57 O.S. §§ 332–332.21; OKLA. ADMIN. CODE 515:25-1-1, *et seq*.

Thomas's argument, therefore, does not target the type of constitutional defect at issue in *Graham* or *Miller*: depriving a juvenile offender "any chance to later demonstrate that he is fit to rejoin society" or a decision-maker "the ability to consider the 'mitigating qualities of youth.'" *Graham*, 560 U.S. at 79; *Miller*, 567 U.S. at 476. Instead, Thomas demands additional procedural requirements and heightened scrutiny of how parole decision-makers weigh youth and rehabilitation.

*Jones*, 593 U.S. at 98 forecloses this argument: no particular procedures, on-the-record explanations, or factual findings are required in a discretionary system. There, the Supreme Court explained that "if the sentencer has discretion to consider the defendant's youth, the sentencer necessarily *will* consider the defendant's youth, especially if defense counsel advances an argument based on the defendant's youth." *Id.* at 114. That principle applies with equal or greater force to parole proceedings. Discretion necessarily allows the decision-maker to consider youth, maturity, rehabilitation, and other mitigating circumstances. The Eighth Amendment does not require a court-imposed and defendant-preferred checklist or procedural regime on state parole authorities to confirm how those considerations were weighed.

The restraint evident in the *Jones* holding acknowledges that "[t]he States, not the federal courts, make those broad moral and policy judgments in the first instance when enacting their sentencing laws[,]" and that state sentencing authorities, not federal courts, weigh those judgments against the facts and circumstances of individual cases. *Id.* at 119–20. It also follows *Montgomery's* instruction "to 'avoid intruding more than necessary' upon the States" with procedural requirements "because a discretionary sentencing procedure suffices to ensure individualized consideration of a defendant's youth . . . ." *Id.* at 118.

Thomas's argument would improperly convert that limited constitutional inquiry into a roving judicial audit of every discretionary parole decision post-sentencing. It would invite federal courts to second-guess whether state officials gave enough weight to youth, maturity, rehabilitation, public safety, the nature of the offense, and the inmate's institutional record. That is not the Eighth Amendment's role.

As the Supreme Court has long recognized, "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). This Court has likewise made this principle explicit when it comes to Oklahoma's parole system, holding that an inmate "doesn't have a liberty interest in receiving meaningful consideration for parole under Oklahoma law . . . ." *Ong Vue*

*v. Henke*, 746 Fed. App'x 780, 782 (10th Cir. 2018) (unpublished); *see also Shirley v. Chestnut*, 603 F.2d 805, 807 (10th Cir. 1979) (explaining that Oklahoma's discretionary parole system "does not establish a liberty interest."). Perhaps more pertinent here, even *Graham* made clear in the case of juvenile non-homicide offenders that "[a] State is not required to guarantee eventual freedom . . . " *Graham*, 560 U.S. at 75; *see also id.* ("The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life.").

It follows, then, that parole-eligible convicted persons, including juvenile murderers like Thomas, have no constitutional right to certain preferred parole procedures under the Eighth Amendment. Again, no binding authority says otherwise. To the contrary, the U.S. Supreme Court has concluded "[t]here is . . . no substantive expectation of clemency" and "[u]*nder any analysis*, the Governor's executive discretion need not be fettered by the types of procedural protections sought by respondent." *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 282–83 (1998) (emphasis added). Thomas cannot transform the absence of a liberty interest in parole into an Eighth Amendment right to a preferred parole process. The Constitution does not entitle a juvenile offender to release, a favorable parole recommendation, or a parole process that makes rehabilitation controlling.

Accordingly, Oklahoma's discretionary parole system, which permits full consideration of youth and attendant characteristics, easily passes constitutional muster. This Court should affirm the district court's judgment below.

### *B. Thomas Failed to Create a Genuine Dispute that Oklahoma's Parole System Bars Consideration of Youth or Other Mitigating Factors.*

Thomas failed to identify any evidence creating a genuine dispute of material fact that Oklahoma's discretionary parole system prevents decision-makers from considering youth or other mitigating circumstances. Nothing in the record or Thomas's brief suggests any State Official "expressly refuses *as a matter of law* to consider relevant mitigating circumstances" or "refuses as a matter of law to consider the defendant's youth . . . ." *Jones*, 593 U.S. at 115 n.7. To the contrary, "a PPB member could—and does—consider an inmate's age at the time of the underlying offense as a part of their consideration to grant or deny parole." *See, e.g.,* App. Vol. II at 118. The Governor likewise has stated that "upon the Pardon and Parole Board's submission of favorable parole or clemency recommendations to the Governor, the Governor considers within the Constitutional and statutory bounds whether to grant parole or clemency, on a case-by-case basis." *Id.* at 138.

Furthermore, members of the Board have testified they actually consider an inmate's youth at the time of the offense as an important factor in exercising their discretion to recommend parole. *Id.* at 123 (describing that she found "age of the inmate at the time of the underlying offense" "to be an important factor in [her]

decision making."); *Id.* at 117 (describing that he considered the investigator recommendation "[s]imilar to all the other information included in the investigative report. . . . [I]t provides information to include in making a decision."). Both Doyle and Luck were on the Board and participated in several of Thomas's parole review decisions.

The Board is also provided "[t]he information . . . needed to know the individual's age at the time the crime was committed . . . ." *Id.* at 118; *see also id.* at 111–17, 123–25. Even if that weren't the case, the parole applicant is afforded the opportunity to present information about his or her juvenile status through letters, which the Board reviews in considering whether to recommend parole. *See id.* at 72–75, 105, 108–09, 122, 125–26. Consistent with the same, when Thomas was considered for parole by the Board, the investigative reports included information needed to know his age at the time of the murders. *See id.* at 51–53, 55–57, 60–65, 68–70. In fact, the 2016 and 2019 investigative reports specifically highlighted that "Thomas has been in DOC custody for these offenses since he was seventeen" and that "Thomas was 15 at the time of his arrest . . . ." *Id.* at 62, 65. Moreover, Thomas himself submitted letters highlighting the fact that he was 15 years old at the time of the murders. *Id.* at 127–30. Upon a favorable recommendation by the Board, that same information would have been forwarded to the Governor or his Office. *Id.* at 72-73, 133.

What's more, the record and other publicly available information wholly forecloses a conclusion that Oklahoma's parole system merely "offer[s] juvenile offenders sentenced to life the possibility of parole on paper, while in practice prohibiting such inmates from ever exercising their Eighth Amendment protections." Br. at 40. During Governor Stitt's nearly eight years in office, the Board has recommended parole for at least fourteen (14) juvenile offenders serving life sentences: Allison Beard, Nathan Butler, Deodrick Carter, Terry L. Lee, Darreld Lewis, James D. Lewis, Herman Snell, Wayne Thompson, Donnino Moreland, Cheyenne Moore, Christopher L. Jackson, Robin Ratliff, Johnny Jumper, and Lawyer Cary. *See* OKLA. SECRETARY OF STATE, *Search Certificates of Pardon, Parole, Commutation, and Revocation*, https://www.sos.ok.gov/gov/pardonParole.aspx; OKLA. CORRECTIONS, *OK Offender Lookup*, *https://okoffender.doc.ok.gov/*; App. Vol. II at 18 n.5, 139–41. Governor Stitt granted eleven of those paroles and denied only three. Thomas's theory of an illusory parole system cannot be squared with those numbers: juvenile offenders serving life sentences not only receive favorable recommendations, but have been granted parole in the substantial majority (over 78%) of those cases.

Consequently, it is undisputed that *in practice here* Oklahoma's parole system is discretionary and allows the Board full consideration of youth, maturity, rehabilitation, and other mitigating factors. None of the evidence Thomas cites

shows that parole decision-makers were barred from considering youth or mitigation factors. At most, the cited evidence reflects his view that DOC and Board policies do not provide special or elevated procedures or separate treatment for juvenile offenders to demonstrate maturity and rehabilitation. *See, e.g.,* Br. at 44–45 (complaining that Oklahoma's parole process does not distinguish "between adult and juvenile offenders[,]" "track juveniles separately from adults[,]" or "educate about the salient characteristics of youth or greater potential for reform for juveniles"). But that is not the relevant *Miller* Eighth Amendment inquiry. Those facts may be relevant to the wisdom of a parole recommendation, but they do not show parole decisionmakers refuse to consider youth, maturity, rehabilitation, or other mitigating factors.

In sum, Oklahoma's discretionary parole system provides a meaningful opportunity to obtain early release based on demonstrated maturity and rehabilitation as a matter of law. Thomas has not identified evidence creating a genuine dispute of material fact on that issue. Thus, Thomas's Eighth Amendment claim fails, and the district court should be affirmed.

## III. The District Court Properly Declined Supplemental Jurisdiction Over Thomas's State-Law Claim.

After granting summary judgment on Thomas's federal claims, the district court declined to exercise supplemental jurisdiction over his claim under Article II, Section 9 of the Oklahoma Constitution. That was well within the court's discretion.

When all federal claims have been resolved before trial, a district court may decline supplemental jurisdiction over remaining state-law claims. 28 U.S.C. § 1367(c)(3); *Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998).Thomas identifies no independent reason why the district court's ordinary exercise of that discretion was an abuse.

In any event, Thomas's state-law claim adds nothing new that would change the result. He relies on the same theory, the same asserted parole defects in Oklahoma's parole system, and the same claimed entitlement to a meaningful opportunity for release. Because his federal Eighth Amendment claim fails as a matter of law, the parallel state constitutional claim fails for the same reasons or, at minimum, was properly left for state courts to resolve in the first instance.

## CONCLUSION

The district court correctly granted summary judgment in favor of Defendants-Appellees. Thomas was convicted of three murders as a juvenile, sentenced under a discretionary sentencing scheme to life with the possibility of parole, and has been considered for parole on multiple occasions. *Graham* does not apply because Thomas is a homicide offender. *Miller* does not apply because Thomas was not sentenced under a mandatory life without parole scheme and was not sentenced to life without parole. And even if some *Graham*-style "meaningful-opportunity" standard applied to juvenile homicide offenders, Oklahoma's

discretionary parole system satisfies that standard, and Thomas otherwise failed to create a genuine issue of material fact that that Oklahoma's parole system prevents consideration of youth or other mitigating factors. The judgment of the district court should be affirmed.

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellee Governor Stitt does not request oral argument. The issues are fully presented in the briefs and record, and the district court's judgment may be affirmed by applying settled Supreme Court and Tenth Circuit precedent to the undisputed facts. *See* Fed. R. App. P. 34(a)(2)(B)-(C).

Respectfully submitted,

*s/Phillip G. Whaley*

Phillip G. Whaley, OBA #13371
Grant M. Lucky, OBA #17398
RYAN WHALEY
400 North Walnut Avenue
Oklahoma City, OK 73104
(405) 239-6040
(405) 239-6766 FAX
pwhaley@ryanwhaley.com
glucky@ryanwhaley.com

***Counsel for Defendant-Appellee***
***J. Kevin Stitt, Governor of Oklahoma***

**CERTIFICATE OF SERVICE**

I hereby certify that on May 29, 2026, I electronically filed the foregoing using the Court's CM/ECF System which will send notification of such filing to the following:

Emily Merki Long – emily.long@kirkland.com
Alyssa M. McClure – alyssa.mcclure@kirkland.com
Caroline H. Robinson – caroline.robinson@kirkland.com

*s/Phillip G. Whaley*
Phillip G. Whaley

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

1. All required privacy redactions have been made per 10th Cir. R. 25.5.

2. If required to file additional hard copies, this ECF submission is an exact copy of those documents.

3. The digital submissions have been scanned for viruses with the most recent version of WatchGuard and, according to that program, are free of viruses.

Dated: May 29, 2026

*s/Phillip G. Whaley*
Phillip G. Whaley

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

Pursuant to Fed. R. App. P. 32(g)(1), the undersigned certifies that the foregoing document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because it contains 9,822 words, exclusive of those items listed in Fed. R. App. P. 32(f).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief was prepared in a proportionally spaced typeface using Microsoft 365, Version 2604, in a 14-point Times New Roman style.

Dated: May 29, 2026

*s/Phillip G. Whaley*
Phillip G. Whaley